UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**TERRY DALE TILMON #81500**　　　　　　　**CASE NO. 3:21-CV-04037 SEC P**

**VERSUS**　　　　　　　　　　　　　　　　　**JUDGE TERRY A. DOUGHTY**

**CHAIRMAN ET AL.**　　　　　　　　　　　　**MAG. JUDGE KAYLA D. MCCLUSKY**

**REPORT & RECOMMENDATION**

Pending before the undersigned Magistrate Judge, on reference from the District Court, is a motion to dismiss for failure to state a claim upon which relief can be granted [doc. #45], filed by Defendant James LeBlanc. The motion is unopposed.

Also pending before the undersigned is a motion for leave to amend [doc. #59], filed by Plaintiff Terry Dale Tilmon.

For reasons that follow, it is recommended that the motion to dismiss be GRANTED, and the motion for leave to amend is DENIED.

**Background**

Plaintiff Terry Dale Tilmon ("Plaintiff"), a prisoner at Madison Correctional Center ("MCC"),[1] proceeding pro se and in forma pauperis, filed this proceeding on November 22, 2021, under 42 U.S.C. § 1983 against Defendants the Chairman of the Union Parish Detention Center Commission ("UPDCC"); Superintendent Donnie Adams; Secretary James LeBlanc; the Union Parish Police Jury ("UPPJ"); and the UPDCC.[2] [doc. #13, p. 1].

---

[1] Plaintiff advised the Court on October 21, 2022, that he was transferred from Franklin Parish Detention Center ("FPDC") to MCC. [doc. #43].

[2] Plaintiff alleged other claims that were dismissed by the Court on April 14, 2022. [doc. #16].

Plaintiff claims that he was "subjected to extreme levels of environmental tobacco and synthetic marijuana smoke." [doc. # 1, p. 5]. He alleges:

> 9. Although the facility has in place non-smoking policies, such policies are not enforced due to inadequate staffing to enforce said policy.
>
> 10. Moreover, tobacco products are sold in the facility's commissary. (ECigarettes).
>
> 11. [T]he facility does not offer non-smoking housing units for non-smokers who desire to avoid breathing second-hand smoke.
>
> 12. Smoke in housing dormitories [is] so prevailing that such smoke appears like fog on occasions and even has stained the walls of his living area.
>
> 13. It is not uncommon that employees complain about the odor and density of tobacco and synthetic marijuana.
>
> 14. Huge amounts of tobacco and synthetic marijuana are smuggled into the facility daily due to inadequate staffing.
>
> 15. [T]he UPDCC is aware of the dangers of second-hand smoke as [Plaintiff] regularly experiences headaches, coughing, sneezing, rises in blood pressure ([Plaintiff] suffers from hypertension) loss of appetite, [and] sleeplessness.

*Id.* at 5–6. Plaintiff also experienced "nose bleeds." [doc. # 12, p. 1].

Plaintiff states that "the conditions began on June 24, 2019," and ended October 22, 2021, when he transferred to RPDC. *Id.* at 2, 5. He faults the UPDCC Chairman for failing to enforce non-smoking policies and failing to prevent the introduction of tobacco and synthetic 4 marijuana. *Id.* at 2. He also faults the UPPJ, Superintendent Adams, the UPDCC, and Officer McElroy. [doc. #s 1, p. 14; 12, pp. 3, 5, 6].

Plaintiff claims that he was unable to practice his religion because of the environmental marijuana smoke. [doc. # 1, p. 6]. The smoke caused him to experience a "euphoric state of mind[,]" and "he is not to perform prayer in such a state of mind" under his Islamic faith. The "presence of synthetic marijuana smoke in dormitory housing substantially burdens his ability to

practice his religious beliefs" because he has "had to abandon numerous prayers . . . ." *Id.* He must pray five times each day, but he was unable to do so at least three times each day due to the synthetic marijuana smoke. [doc. # 12, p. 2]. He writes: "There is no alternative to prayer." *Id.*

Plaintiff claims that the UPDC was infested with cockroaches, bed bugs, and gnats. [doc. # 1, p. 8]. The "presence of vermin [did] not abate" throughout his "entire stay at UPDC[.]" *Id.* He alleges that "the presence of vermin without effective pest control services has the potential to cause disease . . . ." *Id.*

Plaintiff claims that all housing areas were "infested with black mold and mildew . . . ." [doc. # 1, p. 9]. Ventilation filters were clogged with inches of dust, impeding air flow and the ability to vent synthetic marijuana smoke. *Id.* at 9-10. Lighting fixtures were "soiled with thick dust . . . ." *Id.* at 10.

On November 22, 2020, in "'M' dormitory[,]" Plaintiff slipped and fell on a "puddle of water that collected on the floor beneath and around the water fountain." [doc. # 1, p. 11]. He claims that the water fountain was faulty because its stream extended beyond the basin. *Id.* He experienced numbness in his fingers, limited movement in his left arm, and pain in his left shoulder, hip, neck, and "cervical area[.]" *Id.* He alleges that "there were no wet floor signs warning of the floor's condition." *Id.* Plaintiff and "others have reported the condition of the water fountain to maintenance, correction officers, and the warden to no avail." *Id.*

Plaintiff maintains that after his fall, medical personnel only glanced at his shoulder and failed to "take any vital signs[.]" [doc. # 1, p. 11]. He also states that he did not receive "any outside medical care or examination by a trained orthopedist." *Id.* at 12. He claims that Superintendent Adams did not grant the medical department the approval to send him to "outside medical care." [doc. # 12, pp. 4, 7].

Plaintiff claims that Adams fired him from his position at the UPDC law library and transferred him to RPDC because Plaintiff showed him a grievance and a copy of his initial pleading in this proceeding. [doc. # 12, p. 5].

Plaintiff seeks nominal, compensatory, and punitive damages, and he asks the Court to file criminal charges against Defendants. *Id.*

On April 14, 2022, upon the undersigned's initial review, the Court adopted the Report and Recommendation [doc. #13] and dismissed ten of Plaintiff's claims. [doc. #16]. Eight claims remained, including two against Secretary LeBlanc: a Section 1983 claim alleging that Plaintiff was exposed to unreasonably high levels of e-cigarette and marijuana smoke, and a condition-of-confinement claim concerning the presence of insects; rust; peeling paint; mold; mildew; dust; lack of ventilation; and wet floors at UPDC. [doc. #13, p. 1–2]. All other claims against Secretary LeBlanc were dismissed. *Id.*

On October 28, 2022, Secretary LeBlanc filed the instant motion to dismiss. [doc. #45]. Secretary LeBlanc asserts that he is entitled to qualified immunity, and, therefore, Plaintiff fails to state a claim against him upon which relief can be granted. *Id.*

Plaintiff did not file any opposition; however, on December 16, 2022, Plaintiff filed a motion to amend and supplement his complaint. [doc. #59]. Therein, Plaintiff seeks the Court's leave to join five additional claims against Secretary LeBlanc. *Id.* Plaintiff seeks to allege state law negligence claims, as well as an additional claim under Section 1983. *Id.*

## Analysis

### I. Standard of Review

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading states a claim for

relief, inter alia, when it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a)(2). Circumstances constituting fraud or mistake, however, must be alleged with particularity. FED. R. CIV. P. 9(b).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility does not equate to possibility or probability; it lies somewhere in between. *See Iqbal*, 556 U.S. at 663. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal,* 556 U.S. at 663. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148 (5th Cir. 2010).

"The notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 F. App'x. 710, 713 (5th Cir. 2008) (citations and internal quotation marks omitted). Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [her] legal argument." *Skinner v. Switzer*,

5

562 U.S. 521, 530 (2011). Indeed, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl.*, 550 U.S. at 555).

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663. A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly*, 550 U.S. at 556. Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 320 (1989).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference and matters of which a court may take judicial notice"—including public records. *Dorsey*, 540 F.3d at 338; *Norris v. Hearst Trust*, 500 F.3d 454, 461 (5th Cir. 2007) (proper to take judicial notice of matters of public record).

II. *Qualified Immunity*

In his motion to dismiss, Secretary LeBlanc raises qualified immunity. The doctrine of qualified immunity "adds a wrinkle" to Section 1983 pleadings. *Arnold v. Williams*, 979 F.3d 262, 266–67 (5th Cir. 2020). "'A plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity.'"

*Id.* (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)). Thus, a plaintiff must plead qualified-immunity facts with the minimal specificity that would satisfy *Twombly* and *Iqbal*. *Id.*

Notably, "qualified immunity is an immunity from suit, not merely a defense to liability." *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021). Protection from pretrial discovery—and the significant time and costs associated therewith—is "among the chief benefits" of qualified immunity. *Lopez v. Ramirez*, No. 21-40235, 2022 WL 3230442, at *2 (5th Cir. 2022) (per curiam). Thus, "a defendant's entitlement to qualified immunity should be determined at the earliest possible stage of the litigation." *Id.*

When, as here, a plaintiff seeks money damages from government officials in their individual capacities under Section 1983, the affirmative defense of qualified immunity is available to protect defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The qualified immunity doctrine balances two often conflicting interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* As such, "[t]he protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.*

In effect, qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (citing *Malley v. Briggs*, 475 U.S. 335, 343 (1986).

Qualified immunity is nominally characterized as an affirmative defense. Once raised by defendants, however, it devolves upon the plaintiff to negate the defense by showing that the officials' conduct violated clearly established law. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Plaintiff's burden is two-pronged. *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). First, a plaintiff must demonstrate that defendant(s) violated a constitutional right under current law. *Id.* "Second, [plaintiff] must claim that the defendant[s'] actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id.* The courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009).

In his motion to dismiss, Secretary LeBlanc argues that he is entitled to qualified immunity because he has no authority over the UPDC, and the Louisiana Department of Public Safety and Corrections' ("DPSC") decision to contract with the UPDCC, the UPPJ, or the UPDC, "cannot be deemed as deliberate indifference as there is no constitutional right regarding with whom the [DPSC] contracts." [doc. #45-2, p. 5–6]. And, according to Secretary LeBlanc, Plaintiff does not allege that he has any involvement with the day-to-day operations of UPDC. *Id.* Therefore, Plaintiff fails to allege that he was personally involved in the alleged constitutional deprivations. *Id.* at 6.

Plaintiff did not file any opposition.[3] In his Amended Complaint, Plaintiff alleges the following regarding Secretary LeBlanc:

> Secretary James LeBlanc, in his capacity as the Secretary of the Louisiana Dept. of Corrections has a statutory duty to monitor the correctional services provided by contractors such as the UPDCC. The Secretary has knowledge of the conditions mentioned herein through grievances and social media. His failure to take reasonable measures to ameliorate such conditions as he has the power to do so, demonstrate his deliberate indifference to the current and future health of those in his care and custody. He is certainly aware of the dangers of tobacco and synthetic marijuana smoke; combined with the conditions herein.

[doc. #12, p. 6]. Thus, Plaintiff alleges two Section 1983 claims against Secretary LeBlanc: one, that he was exposed to unreasonably high levels of e-cigarette and marijuana smoke; and two, a condition-of-confinement claim concerning the presence of insects; rust; peeling paint; mold; mildew; dust; lack of ventilation; and wet floors at UPDC. [doc. #13, p. 1–2].

As to the exposure to second-hand smoke claim, the Supreme Court has applied a two-pronged test to determine whether exposure to second-hand smoke violates a prisoner's Eighth Amendment right. *Wesley v. LeBlanc*, No. 1:20-cv-00243, 2021 WL 1219982 at *4 (W.D. La. March 15, 2021). First, a prisoner must show that he is being exposed to unreasonably high levels of environmental tobacco smoke. *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). Second, a prisoner must show, subjectively, that the prison authorities were deliberately indifferent to his plight. *Id.*

---

[3] Plaintiff filed a motion for leave to supplement/amend his complaint on December 16, 2022. [doc. #59]. Therein, Plaintiff argues that "since the filing of this matter, other occurrences make it necessary to supplement with facts that are germane to claims related to retaliation among other things." *Id.* at 1. However, none of the factual allegations in the proposed second amended complaint are relevant to Plaintiff's existing claims against Secretary LeBlanc. The proposed second amended complaint also contains new claims against Secretary LeBlanc, which are discussed *infra*.

As to the condition of confinement claim, "to be tantamount to the infliction of cruel and unusual punishment, prison conditions must pose an unreasonable risk of serious damage to the prisoner's health . . . and prison officials must have acted with deliberate indifference to the risk posed. . . ." *Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015).

Deliberate indifference is an element of both claims. Deliberate indifference is "an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). An official is deliberately indifferent when he "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. He must both "know that [the inmate] faces a substantial risk of serious bodily harm" and "disregard that risk by failing to take reasonable measures to abate it." *Gobert*, 463 F.3d at 346 (quoting *Farmer*, 511 U.S. at 847).

Moreover, for a supervisory official to be liable under Section 1983, the official must "be shown to have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights, or there must be some causal connection between the actions of the official and the constitutional violation sought to be addressed." *Kyles v. LeBlanc*, No. 16-0399-SDD-EWD, 2017 WL 4080474, at *4 (M.D. La. Aug. 10, 2017) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). Allegations that an official is responsible for the actions of subordinate officers or co-employees under a theory of vicarious liability or respondeat superior is alone insufficient to state a claim under Section 1983. *Id.* (citing *Ashcroft*, 556 U.S. at 676; *Monnell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978); *Bell v. Livingston*, 356 F. App'x 715, 716–17 (5th Cir. 2009)).

The undersigned agrees with Secretary LeBlanc that Plaintiff's allegations are insufficient to plausibly allege deliberate indifference or Secretary LeBlanc's personal and direct involvement in the alleged deprivation of Plaintiff's rights. Plaintiff's assertion that Secretary LeBlanc has

knowledge of the conditions at UPDC through "grievances and social media" is conclusory and insufficient to state a claim for relief. *See Wesley*, 2021 WL 1219982, at *4 (finding that plaintiff's assertion that he sent Secretary LeBlanc written complaints informing him of exposure to environmental tobacco smoke was insufficient to establish Secretary LeBlanc's deliberate indifference or personal involvement in the alleged constitutional violation).

Plaintiff also fails to oppose or otherwise respond to Secretary LeBlanc's assertion of qualified immunity, and, therefore, fails to meet his burden to establish the inapplicability of Secretary LeBlanc's qualified immunity defense. *See id.* Thus, Secretary LeBlanc is entitled to qualified immunity, and Plaintiff's existing claims against him should be dismissed.

III. *Leave to Supplement/Amend*

Rule 15 of the Federal Rules of Civil Procedure provides that, upon application, the court shall grant a party leave to amend its pleading "freely . . . when justice so requires." FED. R. CIV. P. 15(a)(2). Leave to amend pleadings is "entrusted to the sound discretion of the district court . . . ." *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir.1998) (internal quotation omitted). However, this standard is somewhat misleading because Rule 15 "evinces a bias in favor of granting leave to amend." *Martin's Herend Imports v. Diamond & Gem Trading U.S.A. Co.*, 195 F.3d 765, 770 (5th Cir. 1999) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981)). Ultimately, a district court must have a "substantial reason" to deny a request for leave to amend. *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (internal citation omitted).

In deciding whether to grant a party leave to amend, the Court considers the following factors: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of the

amendment.  *Rosenzweig v. Azurix Corp.,* 332 F.3d 854, 864 (5th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Absent any of these factors, leave should be granted.  *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citing, *Foman*, 371 U.S. at 182).

Upon review of Plaintiff's proposed second amended complaint, the undersigned finds that amendment would be futile.  An amendment is futile if it would fail to survive a Rule 12(b)(6) motion.  *Marucci Sports, LLC v. NCAA*, 751 F.3d 368, 378 (5th Cir. 2014); *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (A district court "acts within its discretion in denying leave to amend where the proposed amendment would be futile because it could not survive a motion to dismiss.").  Therefore, a proposed amended complaint is reviewed "under the same standard of legal sufficiency as applied under Rule 12(b)(6)."  *Id.* (quoting *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000)).

In this case, Plaintiff seeks leave to join new claims against Secretary LeBlanc, including state law negligence claims as well as an additional federal law claim.  [doc. #59].  First, Plaintiff alleges that Secretary LeBlanc breached a statutory duty of care by negligently failing to intervene and stop Plaintiff's transfer to UPDC, where inmates can purchase tobacco products.  [doc. #59, p. 3].  Second, Plaintiff alleges that Secretary LeBlanc breached his duty of care by negligently allowing the UPDCC to sell e-cigarettes.  *Id.* at 3–4.  Third, Plaintiff alleges that Secretary LeBlanc negligently failed to provide a dormitory for non-smokers.  *Id.*  Fourth, Plaintiff alleges that Secretary LeBlanc negligently failed to monitor the services provided by contractors such as the UPDCC, who in turn negligently failed to provide a safe environment for inmates.  *Id.* at 4–5.  Finally, Plaintiff argues that Secretary LeBlanc's actions permitting the sale of e-cigarettes at the UPDC demonstrate deliberate indifference to his serious medical needs, in violation of the Eighth Amendment.  *Id.* at 5.

Louisiana courts employ a duty and risk analysis when deciding claims brought under Louisiana Civil Code Article 2315. *Brian v. Patrick*, No. 15-541-JJB-EWD, 2016 WL 394002, at *3 (M.D. La. Feb. 1, 2016). For liability, the plaintiff must prove the following elements: (1) the defendant had a duty to conform his conduct to a specific standard; (2) the defendant breached that duty; (3) the defendant's conduct was the cause in fact of the plaintiff's injuries; (4) the defendant's conduct was the legal cause of the plaintiff's injuries; and (5) the plaintiff sustained actual damages. *Id.* (citing *Thibodeaux v. Trahan*, 74 So.3d 850, 853 (La. Ct. App. 2011)).

Here, Plaintiff does not plead any specific facts to support his proposed state law negligence claims. As to the first claim, Plaintiff's allegation that Secretary LeBlanc negligently failed to intervene and stop his transfer to UPDC is insufficient to state a claim for relief. Plaintiff does not allege any facts suggesting that Secretary LeBlanc was personally aware that Plaintiff was being transferred to UPDC, nor does he cite any statute or case law to support his allegation that Secretary LeBlanc had a duty to intervene to prevent his transfer. As to his second and third claims, Plaintiff fails to plausibly allege that Secretary LeBlanc was aware that the UPDC sold tobacco products or that he had a duty to provide a dormitory for non-smokers—instead, Plaintiff recites some of the elements for a negligence claim. *See Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) ("Legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."). As to his fourth claim, and indeed, all of his state law negligence claims, Plaintiff fails to plead that Secretary LeBlanc was the actual and legal cause of his alleged injuries. Thus, all of Plaintiff's state law claims would be subject to dismissal under Rule 12(b)(6).

As to the proposed Eighth Amendment claim, the undersigned finds that Plaintiff fails to plausibly allege that Secretary LeBlanc acted with deliberate indifference. Plaintiff does not allege any facts to show that Secretary LeBlanc was personally and directly involved in allowing the sale

of e-cigarettes at the UPDC.  Rather, Plaintiff makes the conclusory allegation that "Secretary James LeBlanc's actions" permitted the sale of e-cigarettes at UPDCC.  [doc. #59, p. 4].  Vague and conclusory statements are insufficient to plausibly state a claim for relief under Rule 12(b)(6).  *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").  Thus, Plaintiff's proposed Eighth Amendment claim would be subject to dismissal under Rule 12(b)(6).

In sum, if the Court were to grant leave to amend, Plaintiff's proposed claims would be subject to dismissal under Rule 12(b)(6).  Therefore, amendment is futile, and Plaintiff's motion for leave to amend is DENIED.

## Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that Defendant James LeBlanc's motion to dismiss for failure to state a claim upon which relief can be granted [doc. #45], be **GRANTED**, and that Plaintiff's claims against him be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff Terry Dale Tilmon's motion to supplement/amend [doc. #59] is **DENIED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14)** days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 27th day of December, 2022.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE